UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERESA HAYWARD,

                Plaintiff,        Civil Action No. 14-14613
                                         Honorable Marianne O. Battani
                                         Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 14]**

Plaintiff Teresa Hayward ("Hayward") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [13, 14], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Hayward is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [14] be GRANTED, Hayward's Motion for Summary Judgment [13] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

1

## II.     REPORT

### A.     Procedural History

On December 5, 2011, Hayward filed applications for DIB and SSI, alleging a disability onset date of April 1, 2011. (Tr. 142-156). These applications were denied initially on February 15, 2012. (Tr. 84-91). Hayward filed a timely request for an administrative hearing, which was held on March 11, 2013, before ALJ Donald D'Amato. (Tr. 39-65). Hayward, who was represented by attorney Stephanie Rossi, testified at the hearing, as did vocational expert Luann Castellana. (*Id.*). On May 17, 2013, the ALJ issued a written decision finding that Hayward is not disabled under the Act. (Tr. 21-33). On October 8, 2014, the Appeals Council denied review. (Tr. 1-6). Hayward timely filed for judicial review of the final decision on December 6, 2014. (Doc. #1).

### B.     Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months,

2

>and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.  Background**

    *1.  Hayward's Reports and Testimony*

At the time of the administrative hearing, Hayward was 47 years old, and at 5'5" tall, weighed 320 pounds. (Tr. 43, 46). She lived in a mobile home with her husband and two children. (Tr. 48, 50). She completed high school, "a little college," and "truck training." (Tr. 43). After that training, she worked as a truck driver for different construction companies from 1999 to October 2010. (Tr. 50-51). Hayward alleges that her medical problems – which include fibromyalgia, arthritis in her joints, obesity, headaches, depression, asthma, chronic obstructive pulmonary disease, hypothyroidism, hypertension, obstructive sleep apnea, and tachycardia – began in April 2011. (Tr. 43, 142). That month, she obtained a new job as a stock person at a dollar store, but quit that job in May 2011 because "the pain was just so bad from being up on my feet constantly." (Tr. 44). In September 2012, she decided to try a "sit down job" at a call

center. (*Id.*). However, she often "call[ed] off" due to her pain, was fired in October 2012, and has been unemployed ever since. (*Id.*).

Hayward alleges that, due to her fibromyalgia and arthritis, she has "all over pain," in various places, including her hips, back, shoulders, and arms. (Tr. 47). She also claims that this pain prevents her from sitting for more than 10 to 15 minutes at a time, standing for more than ten minutes at a time, and walking more than 30 yards. (Tr. 47-48). On the one hand, she testified that the pain in her right knee improved after she had surgery to "repair the meniscus tears." (Tr. 53). On the other hand, she claimed that she still has arthritis pain in both knees. (Tr. 45-46). To control the pain from both fibromyalgia and arthritis, she takes Cymbalta,[1] along with "some ibuprofen or Aleve." (Tr. 47). She also testified that she uses a CPAP machine to help with her sleep apnea, and takes medication to control her asthma. (Tr. 49). She also periodically suffers from headaches "whenever they come on," and takes "ibuprofen or Aleve" to alleviate them. (Tr. 49, 52).

Hayward testified that she has "20 to 22" bad days a month, during which she is "not able to do anything around the house" due to her pain. (Tr. 50). She cannot bend over to pick up items from the floor, but "on a good day," she will vacuum and "straighten up" her home. (*Id.*). She also reported that she has difficulty climbing stairs and lifting more than a gallon of milk. (Tr. 48). Hayward is able to attend to her personal care needs, prepare meals, and grocery shop (with an "automatic cart"). (Tr. 56). She is able to drive and attends church and her son's activities on a regular basis.[2] (Tr. 57-58). Hayward further testified that she spends approximately five hours per day on Facebook, as "if [she] had a job," because it makes her "feel

---

[1] Hayward testified that Cymbalta also serves as her depression medication. (Tr. 47).

[2] Notably, she drove herself to the hearing and testified that she attended her son's "Bible competition" the day before. (Tr. 57-58).

4

like [she's] doing something with [her] life." (Tr. 59). Upon questioning by her attorney, Hayward distinguished this activity from working at a job, saying that she can take frequent breaks from Facebook whenever the pain requires her to do so (in contrast to being "bound to a job" and required to "sit at this desk for an hour"). (Tr. 60).

### 2. *Medical Evidence*

The Court has thoroughly reviewed Hayward's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *Vocational Expert's Testimony*

Luann Castellana testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 61-64). The ALJ asked the VE to imagine a claimant of Hayward's age, education, and work experience with the following limitations: she can perform simple, unskilled work with one-, two-, or three-step instructions, occasionally in close proximity to coworkers and supervisors (meaning that she can occasionally function as a member of a team), occasionally in direct contact with the public, and in a "low stress" environment (defined as having only occasional changes in the work setting); she can lift or carry five pounds frequently and ten pounds occasionally, can stand and/or walk with normal breaks for a total of two hours in an eight-hour workday (but for only 15 minutes at a time), and can sit with normal breaks for a total of six hours in an eight-hour workday (but for only 15 minutes at a time); she can push and pull with the upper and left lower extremities with the aforementioned weight restrictions for up to two-thirds of a workday (but only occasionally with the right lower extremity); she can perform activities requiring bilateral manual dexterity for both gross and fine manipulation of handling and reaching for up to two-thirds of a workday; she must avoid hazards in the

workplace, such as moving machinery and unprotected heights; she needs a "relatively clean" work environment, meaning stable temperatures, stable humidity and good ventilation that allows her to avoid concentrated exposure to dust, fumes, gases, odors, and other pulmonary irritants; she can occasionally climb stairs with handrails, balance, stoop, crouch, kneel, and crawl, but can never climb ladders, ropes, or scaffolds; and she occasionally needs a hand held assistive device to walk. (Tr. 61-62).

The VE testified that the hypothetical individual would not be capable of performing Hayward's past relevant work. (Tr. 61-63). However, the VE testified that the hypothetical individual would be capable of working in the jobs of sorter/inspector (1,000 jobs in southeast Michigan), small parts assembly (1,200 jobs), and telephone order clerk (1,000 jobs). (Tr. 63).

### D.     The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Hayward is not disabled under the Act. At Step One, the ALJ found that Hayward has not engaged in substantial gainful activity since April 1, 2011 (her alleged onset date). (Tr. 23). At Step Two, the ALJ found that Hayward has the severe impairments of fibromyalgia; "asthma versus chronic obstructive pulmonary disease"; hyperthyroidism; morbid obesity; history of irritable bowel syndrome; obstructive sleep disorder; osteoarthritis of the knees, hips, and spine; arthritis of the hands, shoulder, and elbow; tachycardia; gastroesophageal reflux disease; degenerative joint disease of the knees with a history of meniscal tears, status post right knee arthroscopy, with partial meniscectomy and synovectomy; hypertension; headaches; adjustment disorder with depressed mood; and genetically decreased right eye vision. (Tr. 23-24). At Step Three, the ALJ found that Hayward's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 24-26).

The ALJ then assessed Hayward's residual functional capacity ("RFC"), concluding that she is capable of performing simple, unskilled work with one-, two-, or three-step instructions, occasionally in close proximity to coworkers and supervisors (meaning that she can occasionally function as a member of a team), occasionally in direct contact with the public, and in a "low stress" environment (defined as having only occasional changes in the work setting); she can lift or carry five pounds frequently and ten pounds occasionally, can stand and/or walk with normal breaks for a total of two hours in an eight-hour workday (but for only 15 minutes at a time), and can sit with normal breaks for a total of six hours in an eight-hour workday (but for only 15 minutes at a time); she can push and pull with the upper and left lower extremities with the aforementioned weight restrictions for up to two-thirds of a workday (but only occasionally with the right lower extremity); she can perform activities requiring bilateral manual dexterity for both gross and fine manipulation of handling and reaching for up to two-thirds of a workday; she must avoid hazards in the workplace, such as moving machinery and unprotected heights; she needs a "relatively clean" work environment, meaning stable temperatures, stable humidity and good ventilation that allows her to avoid concentrated exposure to dust, fumes, gases, odors, and other pulmonary irritants; she can occasionally climb stairs with handrails, balance, stoop, crouch, kneel, and crawl, but can never climb ladders, ropes, or scaffolds; and she occasionally needs a hand held assistive device to walk. (Tr. 26-32).

At Step Four, the ALJ determined that Hayward is unable to perform her past relevant work. (Tr. 32). At Step Five, the ALJ concluded, based in part on the VE's testimony, that she is capable of performing a significant number of jobs that exist in the national economy. (Tr. 33). As a result, the ALJ concluded that Hayward is not disabled under the Act. (Tr. 34).

**E.    Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human*

*Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.     Analysis**

In her motion, Hayward argues that the ALJ erred in (1) evaluating her fibromyalgia, and (2) giving little weight to the opinion of her treating physician, Dr. Mallah.[3] These arguments will be addressed in turn.

*1.     The ALJ Properly Evaluated Hayward's Fibromyalgia*

In her motion, Hayward argues that the ALJ improperly assessed her fibromyalgia under the Agency's regulations, and failed to give credence to her treating physician's opinion that she suffers from this condition. (Doc. #13 at 10-12).

Social Security Ruling ("SSR") 12-2p, cited by Hayward, provides that, in assessing a disability claim involving fibromyalgia, the adjudicator must first determine if the condition is a medically determinable impairment. *See Soc. Sec. Rul. 12-2p*, 2012 WL 3104869, at *2 (July 25,

---

[3] Because Hayward's arguments before this Court primarily concern her fibromyalgia diagnosis and symptoms, the Court will focus on this condition in its discussion of the medical evidence.

9

2012). If the claimant's fibromyalgia is determined to be a medically determinable impairment, the adjudicator must then evaluate the impairment according to the five-step sequential evaluation process. *Id.* at \*5-6.

In this case, the ALJ found at Step Two that Hayward's fibromyalgia is a severe impairment. (Tr. 23). The ALJ then stated that, while "Appendix 1 does not provide Listing criteria specific to [] fibromyalgia," he considered this impairment at Step Three, as required by SSR 12-2p. (Tr. 24). Moreover, in formulating Hayward's RFC, the ALJ considered her subjective complaints regarding her fibromyalgia, as well as the objective medical evidence relating to this condition. (Tr. 27-29).

Specifically, the ALJ noted that the medical record is consistent with Hayward having the severe impairment of fibromyalgia, with reports of headaches and multiple tender points. (Tr. 27 (citing Tr. 230-33)). The ALJ further noted that although Brian Kaye, M.D., a rheumatologist, diagnosed this condition at a visit in June 2011, Hayward presented with a normal gait and station, as well as normal muscle strength and tone, at that time. (*Id.*). The ALJ then noted that Hayward relocated to Michigan shortly after her diagnosis and only attempted to establish primary care through August 2011, with "little to no objective medical evidence" of ongoing fibromyalgia symptoms or treatment during this period of time. (Tr. 27 (citing Tr. 239-44)).

The ALJ next noted that Hayward was evaluated by another rheumatologist, Mustapha Mallah, M.D., in September 2011. (Tr. 27 (citing Tr. 529, 536)). At that time, Hayward was not taking any medication for fibromyalgia, despite the fact that she previously had tried Tramadol with some relief. (Tr. 27, 536). The ALJ noted that Hayward was subsequently prescribed Lyrica and Ultram, as well as a course of physical therapy; when that medication proved ineffective, she was prescribed Cymbalta and Ultram. (Tr. 27-28, 529). The ALJ further noted

that, by December 2011, Hayward reported a 60% improvement in her condition on Cymbalta and, in March 2012, stated that she felt fine. (Tr. 28 (citing Tr. 533-34)). The ALJ added that, at an unrelated emergency room visit in July 2012, Hayward lacked any sensory or focal motor deficits and presented with a normal gait; in August 2012, she reported less intense diffuse body pain; and her November 2012 treatment notes revealed only a medication adjustment, with no further evidence of rheumatological care.[4] (Tr. 28 (citing Tr. 316, 529, 531)).

In her motion, Hayward points to Dr. Kaye's fibromyalgia diagnosis and argues that the ALJ erred in "dismiss[ing] [this] medical evidence based on the fact that [she] had 'normal gait' and 'normal muscle strength and tone.'" (Doc. #13 at 10 (citing Tr. 27)). This argument is unavailing for three reasons. First, the ALJ did not "dismiss" Dr. Kaye's diagnosis or his findings of multiple tender points; indeed, he noted that "the record is consistent with the impairment of fibromyalgia" and found that condition to be a severe impairment. (Tr. 23, 27). Second, it was not at all improper for the ALJ to consider Hayward's normal gait, muscle strength, and tone in assessing her subjective complaints and, ultimately, in formulating her RFC. *See* 20 C.F.R. §404.1529(c)(2) (objective medical evidence, such as evidence of reduced joint motion, muscle spasm, and sensory deficit or motor disruption is relevant to a determination of the ability to work). Finally, the ALJ's analysis was far from limited to Hayward's normal gait and muscle strength/tone, as she suggests. Rather, the ALJ also considered her limited efforts to obtain primary care after August 2011, the fact that she was not taking medication for fibromyalgia when she first saw Dr. Mallah, and, perhaps most importantly, her significant improvement by the end of 2011 and into 2012, when Hayward reported that she "feels fine."

---

[4] In addition, the ALJ considered Dr. Mallah's October 2011 opinion, which accounted for Hayward's fibromyalgia. (Tr. 32 (citing 256-57)). As explained in Section II(F)(2), *infra*, the ALJ properly determined that this opinion was entitled to little weight. (Tr. 32).

11

*See supra*, at 10-11. As discussed in more detail below, *infra* at 13-14, the ALJ also properly considered Hayward's daily activities in concluding that the effects of her fibromyalgia were not as severe as she claimed.

Hayward next asserts that the ALJ erred in failing to "properly evaluat[e] the evidence [of her fibromyalgia] in accordance with SSR 12-2p." (Doc. #13 at 10). Again, however, the ALJ evaluated Hayward's fibromyalgia at Steps Two through Four, in accordance with that Ruling (Tr. 23-24, 26-29, 31-32), and Hayward has not shown that any further evaluation was required.[5] Moreover, as the Commissioner points out, the fact that Hayward was diagnosed with fibromyalgia does not equate to a finding of disability. (Doc. #14 at 9 (citing *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) ("[A] *diagnosis* of fibromyalgia does not automatically entitle [the claimant] to disability benefits; particularly so here, where there is substantial evidence to support the ALJ's determination that [the claimant's] fibromyalgia was either improving or, at worst, stable."")). Thus, given that the ALJ found Hayward's fibromyalgia to be a severe impairment, and limited her RFC to account for that condition, there has been no showing of error.

Finally, as part of her argument regarding the ALJ's evaluation of her fibromyalgia, Hayward asserts that the ALJ erred in summarily rejecting her subjective complaints of pain, which she states is a "common occurrence" in fibromyalgia cases. (Doc. #13 at 12). Courts have recognized, however, that determinations of credibility related to subjective complaints of

---

[5] For example, SSR 12-2p provides that, in the course of an RFC assessment, a claimant's "longitudinal record" should be considered "whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" *Soc. Sec. Rul. 12-2p*, 2012 WL 3104869, at *6. Here, the ALJ did just that, describing a series of medical visits that involved pain due to fibromyalgia, stretching over time from an initial evaluation with Dr. Kaye in June 2011 until her final visit with Dr. Mallah in November 2012. (Tr. 27-28).

12

pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). When a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of her symptoms are credible. *Soc. Sec. Rul 96-7p*, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §404.1529.

In this case, the ALJ found that Hayward's fibromyalgia was a severe impairment that "could reasonably be expected to cause the alleged symptoms," and then properly assessed Hayward's credibility by considering her own statements and testimony regarding her functional limitations, as well as the objective medical evidence. (Tr. 31-32). Specifically, in assessing Hayward's credibility, the ALJ considered inconsistencies throughout the record regarding her activities of daily living. (Tr. 31). For example, the ALJ noted that while Hayward initially testified that she experiences "20 to 22 bad days a year," during which she must lie down anywhere from two to six hours per day, she then testified that she spent an excessive amount of time on the computer, "playing games on Facebook, from 10am to 3am, 'like a job.'" (Tr. 31 (citing Tr. 59)). It was not at all a stretch for the ALJ to treat this evidence as an "indication that [Hayward] would be capable of work at a sedentary job with a sit-stand option …" (Tr. 31).

13

The ALJ also cited Hayward's testimony that she previously attempted to work at a sit down job, but was unable to do so, finding this testimony inconsistent with her own reports that, on good days, she is able to clean, vacuum, cook, attend to her own personal care, and attend church and her son's activities. (Tr. 31, 50, 56, 58, 216-19). Moreover, the ALJ considered Hayward's statement to Dr. Mallah in December 2011 that her pain had improved over 60% since she starting using Cymbalta as evidence that her allegations of ongoing disability were not fully credible. (Tr. 28-32). All of these considerations were relevant to the ALJ's credibility determination. *See* 20 C.F.R. §404.1529(c). For these reasons, the ALJ's conclusion that Hayward's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible is supported by substantial evidence.

        2.      *Substantial Evidence Supports the ALJ's Decision to Give Little Weight to Dr. Mallah's Opinion*

Hayward also argues that the ALJ erred in giving "little weight" to the October 2011 opinion of her treating physician, Dr. Mallah. (Doc. #13 at 12-16). Courts have recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakely*, 581 F.3d at 406 (internal quotations omitted). While treating source opinions are entitled to controlling weight under these circumstances, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. *Soc. Sec. Rul. 96-2p*, 1996 WL 374188, at *2 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence."). If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he

14

gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)).

In his October 2011 opinion, Dr. Mallah stated that, due to fibromyalgia and degenerative joint disease of the knee, Hayward could not work at any job for an indefinite period of time. (Tr. 256). Dr. Mallah further opined that Hayward could lift or carry items less than ten pounds for up to one third of an eight-hour workday and could "stand and/or walk less than 2 hours in an 8-hour workday." (*Id.*). The ALJ considered Dr. Mallah's opinion, noting that the treatment relationship was "extremely limited" at the time the opinion was rendered, as Dr. Mallah saw Hayward only twice before issuing his opinion. (Tr. 32). The ALJ also noted the context in which Dr. Mallah issued his October 2011 opinion: specifically, in September 2011, Hayward was not taking any medication; she then began taking Cymbalta and underwent some period of medication adjustment; and, by December 2011, she reported a 60% improvement in her condition. (*Id.*). In other words, then, the ALJ gave good reasons for giving little weight to Dr. Mallah's opinion – namely that Dr. Mallah had a limited treatment relationship with Hayward, and her condition significantly improved within two months of the opinion's issuance – and these reasons are supported by substantial evidence. *See* 20 C.F.R. §404.1527(c).

Hayward briefly raises a few other arguments, none of which have merit. For example, Hayward asserts that since the ALJ gave little weight to Dr. Mallah's opinion, and rejected the state agency physician's assessment, there is no indication as to what medical evidence the ALJ

15

relied upon, suggesting that the ALJ acted as his own "medical expert." (Doc. #13 at 14). Contrary to Hayward's argument, however, courts have held that an ALJ is not required to adopt a specific medical decision in support of his decision. *See, e.g., Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013); *Prince v. Comm'r of Soc. Sec.*, 2014 WL 4639506, at *20 (E.D. Mich. Sept. 16, 2014) (an ALJ "does not have to base her RFC finding on a physician's opinion") (internal quotations omitted). Thus, Hayward has not established error in this respect.

Hayward also asserts that since the ALJ dismissed her treating physician's opinion, he was required to consider whether he needed to re-contact Dr. Mallah for clarification of that opinion. (Doc. #13 at 14-15). As the Commissioner points out, however, the duty to re-contact a treating physician was removed from the Agency's regulations in March 2012. (Doc. #14 at 20 (citing 20 C.F.R. §§404.1512, 404.1527, 416.912, 416.927)). At the time of Hayward's administrative hearing, in March 2013, the governing standard for re-contacting medical sources was that "an ALJ '*may* recontact [a] treating physician, psychologist, or other medical source' but may instead seek further evidence from another source, including the claimant himself." *Toland v. Colvin*, 2013 WL 6175817, at *7, n 3 (quoting 20 C.F.R. §404.1520(b) (emphasis added)). Therefore, Hayward's argument that the ALJ had a duty to re-contact Dr. Mallah is without merit.

Finally, Hayward claims that, "Never does the ALJ evaluate whether [she] is capable of a competitive work schedule i.e., 8 hour day, 40 hour work week," as purportedly "required by SSR 96-8p." (Doc. #13 at 15). But, SSR 96-8p defines an individual's RFC as the "*maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing basis**." *Soc. Sec. Rul. 96-8p*, 1996 WL 374184, at *2 (July 2, 1996) (emphasis in original). A "regular and continuing basis" is defined as "mean[ing] 8 hours a day, for 5 days a

16

week, or an equivalent work schedule." *Id.* at *2. Therefore, by definition, the ALJ's RFC assessment is a determination as to the work Hayward can perform eight hours a day, five days a week. As such, this argument too is without merit.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [14] be GRANTED, Hayward's Motion for Summary Judgment [13] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: September 21, 2015  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
 United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 21, 2015.

                                              s/Eddrey O. Butts
                                              EDDREY O. BUTTS
                                              Case Manager